UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ELEVANCE HEALTH, INC., | |
| Plaintiff, | |
| v. | Case No.: 3:25-CV-740 |
| MARIA GREGORY, | |
| Defendant. | |

**DEFENDANT MARIA GREGORY'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 5

      A.    Elevance and Gravie Are Very Different Businesses ............................. 5

      B.    Ms. Gregory's Employment at Elevance ................................................ 6

      C.    Ms. Gregory's Departure From Elevance ............................................... 6

      D.    Ms. Gregory's Employment at Gravie and Compliance with her Obligations
            to Elevance .............................................................................................. 8

III.  ARGUMENT ....................................................................................................... 8

      A.    Elevance Is Not Likely to Succeed on The Merits ................................. 9

            1.    Elevance's Restrictive Covenants Fail for Lack of Consideration ........... 10

            2.    Elevance's Restrictive Covenants Are Facially Overbroad and
                  Unenforceable ................................................................................ 12

            3.    Elevance Fails to Demonstrate that the Facts Here Warrant
                  Enforcement ................................................................................... 16

      B.    Elevance Has Not Established Irreparable Harm .................................. 18

      C.    Elevance Has Not Established the Balance of Equities Tips In Its Favor ............ 22

      D.    The Public Interest Is Against Enforcement of Elevance's Overly Broad
            Noncompete ........................................................................................... 23

      E.    A Bond Should Be Required In the Event the Court Enters a Restraining
            Order ...................................................................................................... 24

IV.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AL-KO Axis, Inc.* v. *Revelino*,
No. 13-CV-1002 JD, 2013 WL 12309288 (N.D. Ind. Oct. 25, 2013) ....................................16

*Allied Fire Prot., Inc.* v. *Thai*,
No. 17-CV-551, 2017 WL 4354802 (D. Md. Oct. 2, 2017) .....................................23

*Allston* v. *Lewis*,
480 F. Supp. 328 (D.S.C. 1979), *aff'd*, 688 F.2d 829 (4th Cir. 1982) .....................................19

*Bassett* v. *Scott Pet Prods., Inc.*,
194 N.E.3d 1185 (Ind. Ct. App. 2022)....................................11

*Biomet 3i, LLC* v. *Land*,
No. 16-CV-125, 2016 WL 3548355 (N.D. Ind. June 29, 2016) .....................................20

*Bridgestone/Firestone Inc.* v. *Lockhart*,
5 F.Supp.2d 667 (S.D. Ind. 1998) .....................................17

*Buffkin* v. *Glacier Group*,
997 N.E.2d 1 (Ind. Ct. App. 2013)....................................10

*Carroll* v. *Long Tail Corp.*,
167 N.E.3d 750 (Ind. Ct. App. 2021)....................................15

*Clark's Sales & Serv., Inc.* v. *Smith*,
4 N.E.3d 772 (Ind. Ct. App. 2014)......................................... *passim*

*Coates* v. *Heat Wagons, Inc.*,
942 N.E.2d 905 (Ind. Ct. App. 2011)....................................10

*CraneTech, Inc.* v. *Slack*,
No. 24-CV-693, 2025 WL 1754331 (N.D. Ind. June 25, 2025) .....................................21

*Crossmann Cmtys., Inc.* v. *Dean*,
767 N.E.2d 1035 (Ind. Ct. App. 2002)....................................18

*Datson Corp.* v. *MiCore Solutions, Inc.*,
80 Va. Cir. 611 (Va. Cir. 2010) .....................................14

*Direx Israel, Ltd.* v. *Breakthrough Med. Grp.*,
952 F.2d 802 (4th Cir. 1991) .....................................18, 19

*Distrib. Serv., Inc.* v. *Stevenson,*
    16 F. Supp. 3d 964 (S.D. Ind. 2014) ........................................................................14

*Eastern Va. Med. Sch.* v. *Found. for the Howard and Georgeanna Jones Institute*
    *for Reproductive Medicine,*
    69 Va. Cir. 452 (Va. Cir. 2006) ..............................................................................11

*Elevance Health, Inc.* v. *Mohan,*
    No. 23-CV-01497, 2023 WL 6049674 (S.D. Ind. Sept. 15, 2023) .................................. *passim*

*F. W. Means & Co.* v. *Carstens,*
    428 N.E.2d 251 (Ind. Ct. App. 1981)........................................................................19

*Fortiline, Inc.* v. *McCall,*
    No. 2024-0211, 2025 WL 1783560 (Del. Ch. June 27, 2025)................................12

*Genesys Telecomms. Labs., Inc.* v. *Morales,*
    No. 19-CV-00695, 2019 WL 6682171 (S.D. Ind. 2019) ................................16–17

*Globus Medical, Inc.* v. *Jamiso*n,
    No. 22-CV-282, 2023 WL 5826908 (E.D. Va. Aug. 15, 2023)............................23

*Great Lakes Anesthesia, P.C.* v. *O'Bryan,*
    99 N.E.3d 260 (Ind. Ct. App. 2018)..........................................................................16

*Heraeus Med., LLC* v. *Zimmer, Inc.,*
    135 N.E.3d 150 (Ind. 2019) ......................................................................................15

*Hughes Network Sys., Inc.* v. *InterDigital Commc'ns Corp.,*
    17 F.3d 691 (4th Cir. 1994) ......................................................................................19

*Ind. State Dep't of Welfare, Medicaid Div.* v. *Stagner,*
    410 N.E.2d 1348 (Ind. Ct. App. 1980)......................................................................19

*Integrity Auto Specialists, Inc.* v. *Meyer,*
    No. 10-114, 2011 WL 8964509 (Va. Cir. June 28, 2011) ......................................15

*K & K of Va., LLC* v. *Brinkley,*
    87 Va. Cir. 4 (2013) ..................................................................................................22

*Kira (US) Inc.* v. *Samman,*
    No. 23-CV-919, 2023 WL 4687189 (E.D. Va. July 21, 2023)...................... *passim*

*Kuntz* v. *EVI, LLC,*
    999 N.E.2d 425 (Ind. Ct. App. 2013)........................................................................22

*Levine* v. *Meador*,
    No. 20-CV-1073, 2022 WL 18912678 (E.D. Va. Mar. 29, 2022)..........................................20

*Metis Grp., Inc.* v. *Allison*,
    No. 2019-10757, 2020 WL 8813756 (Va. Cir. Jan. 8, 2020) ..................................................15

*North American Fire Ultimate Holdings, LP* v. *Doorly*,
    No. 2024-0023, 2025 WL 736624 (Del. Ch. Mar. 7, 2025) ............................................11–12

*Northwest Federal Credit Union,* v. *SBC Finance, LLC*,
    2016 WL 6276962 (E.D. Va. Oct. 27, 2016)..........................................................................22

*Pathfinder Commc'ns Corp.* v. *Macy*,
    795 N.E.2d 1103 (Ind. Ct. App. 2003)...................................................................................19

*Pool Scouts Franchising, LLC* v. *Stuart Rd. Corp.*,
    No. 24-CV-239, 2025 WL 961675 (E.D. Va. Mar. 31, 2025)................................................21

*RelaDyne Reliability Servs. Inc.* v. *Bronder*,
    No. 20-CV-377, 2020 WL 5745801 (E.D. Va. Aug. 4, 2020).................................................22

*SanAir Techs. Lab., Inc.* v. *Burrington*,
    91 Va. Cir. 206, 2015 WL 12588951 (Va. Cir. Sept. 15, 2015)............................................22

*Seach* v. *Richards, Dieterle & Co.*,
    439 N.E.2d 208 (Ind. Ct. App. 1982).....................................................................................14

*Signature Flight Support Corp.* v. *Landow Aviation Ltd. P'ship*,
    442 F. App'x 776 (4th Cir. 2011) ...........................................................................................18

*Simmons* v. *Miller*,
    544 S.E.2d 666 (Va. 2001).....................................................................................................23

*Simpson Plastering, LLC* v. *Skanska/Trident*,
    No. 16-CV-3439, 2017 WL 773550 (D.S.C. Feb. 27, 2017)..................................................20

*SmartMail Servs., L.L.C.* v. *Ellis*,
    66 Va. Cir. 507 (2003) ...........................................................................................................23

*Tactical Rehab., Inc.* v. *Youssef*,
    No. 24-CV-173, 2024 WL 1175709 (E.D. Va. Mar. 19, 2024)...................................... *passim*

*Taylor* v. *Freeman*,
    34 F.3d 266 (4th Cir. 1994) ..................................................................................................8, 9

*Unger* v. *FFW Corp.*,
    771 N.E.2d 1240 (Ind. Ct. App. 2002)...................................................................................17

*United Healthcare Servs., Inc.* v. *Louro*,
   No. 20-CV-2696, 2021 WL 533680 (D. Minn. Feb. 12, 2021) .................................................13

*Wings LLC* v. *Capitol Leather LLC*,
   88 Va. Cir. 83, 2014 WL 7686953 (Va. Cir. Mar. 6, 2014) .......................................................3

*Zimmer US, Inc.* v. *Keefer*,
   2012 WL 5268550 (N.D. Ind. Oct. 23, 2012) ...........................................................................13

*Zimmer US, Inc.* v. *Miller*,
   2023 WL 3839516 (N.D. Ind. June 6, 2023) .............................................................................13

*Zimmer, Inc.* v. *Davis*,
   922 N.E.2d 68 (Ind. Ct. App. 2010) ..........................................................................................20

**Other Authorities**

Fed. R. Civ. P. 65(c) .......................................................................................................................31

Defendant Maria Gregory submits this memorandum of law in opposition to Plaintiff Elevance Health, Inc.'s ("Elevance") Motion for a Temporary Restraining Order ("TRO"). (ECF 15.)[1]

## I.    INTRODUCTION

Elevance improperly seeks an order to force Ms. Gregory to cease working in her position at Gravie, Inc. ("Gravie") that Elevance has known she has held *for over two months*. Elevance's claim is based solely on restrictive covenants from a stock award agreement that fail for lack of consideration. And Elevance seeks to prevent Ms. Gregory from earning a livelihood notwithstanding that Ms. Gregory has no client-facing responsibilities for Gravie (just as she had no client-facing responsibilities at Elevance), never had a noncompete provision in an employment agreement with Elevance, and did not misappropriate any Elevance trade secrets. Elevance filed its self-styled "emergency application," (ECF 15 at 1), late on a Friday afternoon without *any* explanation as to any change in circumstances that, *two months* into Ms. Gregory's work at Gravie, suddenly required this Court's immediate attention.

The truth is that there is no emergency here, other than one of Elevance's own invention. Ms. Gregory, who devoted 18 years of her professional career to Elevance, gave Elevance two weeks' notice on July 10, 2025, that she intended to terminate her employment at Elevance,

---

[1] All of the reasons stated herein for denying Elevance's Motion for a TRO also warrant denial of Elevance's Motion for a Preliminary Injunction, because the standards are the same. *See Tactical Rehab., Inc.* v. *Youssef*, No. 24-CV-173, 2024 WL 1175709, at *1 (E.D. Va. Mar. 19, 2024) ("The standard for granting a [temporary restraining order] or a preliminary injunction is the same." (quoting *Variable Annuity Life Ins. Co.* v. *Coreth*, 535 F. Supp. 3d 488, 501 (E.D. Va. 2021))). Ms. Gregory intends to file a brief opposing Elevance's Motion for a Preliminary Injunction at such time as may be ordered by the Court, and files this Memorandum of Law specifically to address Elevance's Motion for a TRO.

effective July 25, 2025.  On July 15, 2025, Ms. Gregory informed Elevance that she had accepted the role of Senior Vice President, Underwriting at Gravie, and provided Elevance a full description of her prospective role and responsibilities at Gravie.  (Gregory Decl. ¶ 12 & Ex. A.)[2]  Elevance decided to cut Ms. Gregory's notice period short by two days, and terminated her employment with Elevance on July 23, 2025.  Through Ms. Gregory's last day of employment, Elevance made no objection to Ms. Gregory commencing her employment at Gravie.  Ms. Gregory was first notified after she began working at Gravie by letter from Elevance's in-house counsel dated July 24, 2025—after Elevance removed Ms. Gregory from Elevance's payroll on July 23, 2025—about Elevance's purported "belief," (ECF 14-3), that her work at Gravie could violate an overly broad noncompete covenant included in her Restricted Stock Unit Award Agreement (the "RSUAA"). Ms. Gregory and Gravie promptly responded to Elevance's vague and unfounded concerns, and the Parties engaged in discussions over the course of *seven weeks*, before Elevance abruptly filed its Complaint in this Action on September 12, 2025.  Elevance then waited another *two weeks* before filing its Motion for a TRO, all while Ms. Gregory continued to work in her role at Gravie, a fact of which Elevance was fully aware.

As Elevance's own counsel has acknowledged, a plaintiff seeking a TRO "cannot wait long without undermining its argument that it is suffering irreparable harm in the absence of preliminary relief."[3]  Elevance waited *over two months*, and has not identified any harm it has suffered in that

---

[2]  "Gregory Decl." refers to the Declaration of Maria Gregory In Opposition to Elevance's Motion for a TRO.  "Ex __" refers to Exhibits annexed to the Declaration of Maria Gregory In Opposition to Elevance's Motion for a TRO.

[3]  *See*  https://www.troutman.com/insights/temporary-restraining-orders-and-preliminary-injunctions-in-the-edva-fast-relief-in-the-rocket-docket/

time—no client lost or about to be lost to Gravie, no trade secret stolen or about to be used or disclosed by Ms. Gregory, nothing in any way justifying Elevance's extraordinary request for "emergency" relief after such considerable delay.  Elevance's TRO request should be denied on that basis alone.

What is more, Elevance is attempting to restrict Ms. Gregory's ability to earn a livelihood—and Gravie's ability to compete fairly in the healthcare industry—by seeking enforcement of restrictive covenants in a stock award agreement that (1) fail for lack of consideration, (2) are unenforceable under applicable law because they are overly broad on their face, and (3) in any event would not warrant enforcement on the facts presented here.  Ms. Gregory possesses no Elevance client goodwill, has no client-facing responsibilities at Gravie, and does not possess any Elevance trade secrets she has had or will have any need to use in her role at Gravie, which compared to Elevance is a very small market participant whose offerings overlap with only one Elevance product which accounts for only a small portion of Elevance's business.

It appears Elevance's main goals in filing its much-delayed TRO Motion are to attempt to increase its leverage in the negotiations Elevance has engaged in for the last two months with Ms. Gregory and Gravie over potential work restrictions, to try to stifle fair competition in the healthcare market, and to restrict Ms. Gregory's ability to earn a livelihood.  Elevance thus is engaging in exactly the type of misuse of overly broad restrictive covenants that the Federal Trade Commission recently denounced as unfair and anticompetitive conduct, which is of particular concern in the healthcare sector.[4]  Similar tactics deployed by Elevance recently have been

---

[4]    *See*   https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-chairman-ferguson-issues-noncompete-warning-letters-healthcare-employers-staffing-companies

rebuffed by courts, including in Elevance's unsuccessful attempt to bar an executive from joining a competitor in *Elevance Health, Inc.* v. *Mohan*, No. 23-CV-01497, 2023 WL 6049674, at *7 (S.D. Ind. Sept. 15, 2023) (denying Elevance's motion for a temporary restraining order).[5] Indeed, in Elevance's 29-page brief in support of its TRO, Elevance does not cite a *single case* enforcing any Elevance restrictive covenant, or holding that the provisions in Elevance's RSUAA are reasonable. Nor did Elevance cite any case that restricts an employee's ability to work in a new job solely because of restrictions in a stock award agreement, rather than on the basis of a noncompete in an employment agreement—let alone a stock award agreement like Elevance's RSUAA, which states that in the event of a purported breach (which apparently is to be determined solely by Elevance based on its "belief" of potential violations), the employee is deprived of the consideration specifically provided for the restrictive covenants.

Elevance glosses over the facts of various precedent decisions, but all of them are distinguishable and none supports the extraordinary relief Elevance seeks on this set of facts. Elevance cites no case in which a court has enforced by TRO post-employment restrictive covenants in a stock award the consideration for which has been forfeited and which are as overly broad as Elevance's, let alone against a non-client-facing employee who does not possess customer goodwill, did not misappropriate any trade secrets, joined a much smaller business, and has been

---

[5] This recent rejection of Elevance's overaggressive, anticompetitive tactics to try to restrain its former employees without sufficient basis may explain why Elevance has violated its agreement with Ms. Gregory by failing to bring this Action in Indiana courts, where jurisdiction is exclusive according to the provision Elevance put in its own incentive compensation plan documents, (ECF 14-2 at §20.11), and instead engaged in forum-shopping to bring its claims in a court less familiar with Elevance's history of attempting to restrain its employees from working elsewhere.

working there for two months prior to the filing of the TRO application without any harm to Elevance. Elevance's TRO request should be denied.

## II.    STATEMENT OF FACTS

### A.    Elevance and Gravie Are Very Different Businesses

Elevance is a dominant participant in the healthcare market, with annual revenues of over $175 billion.[6] Its major competitors, according to its public filings, are similarly large (or even larger) insurance companies like United Health[7] and Cigna[8]—companies with over 400, 000 and 70, 000 employees, respectively, and billions of dollars in annual revenues. Gravie launched in the healthcare market in 2013 as a small startup.[9] Today, Gravie has 386 employees across North America, Europe, and South America and approximately $191.6 million in annual revenues.[10] Gravie has been successful in its niche submarket of Level-Funded[11] products for small and midsize businesses, yet it remains a much smaller industry participant than the likes of Elevance and its major competitors. (Gregory Decl. ¶¶ 17–18.)

---

[6] *See https://www.elevancehealth.com/newsroom/elv-quarterly-earnings-q4-2024.*

[7] UnitedHealth Grp., Annual Report (Form 10-K) 8, 27 (Feb. 27, 2025).

[8] The Cigna Grp., Annual Report (Form 10-K) 11, 39 (Feb. 27, 2025).

[9] Gravie Information, RocketReach, https://rocketreach.co/gravie-profile_b5f4c5a5f42d2b80.

[10] *Id.*

[11] "Level-Funded" insurance products involve insurance plans in which an employer partially self-funds its insurance up to a certain level, with the insurance provider covering the risk of claims above that level. (Gregory Decl. ¶ 6.)

B.    Ms. Gregory's Employment at Elevance

Ms. Gregory began working at Elevance in July 2007 as an underwriting analyst. (*Id.* ¶ 3.) She first received a discretionary stock option award from Elevance for outstanding performance in 2012, and received additional discretionary stock awards from 2014 forward. (*Id.* ¶ 3.) In 2020, she was promoted to the role of Regional Vice President ("RVP"), Commercial Specialty Business Division, at which time she first became eligible for recurring equity awards as a supplement to her salary. (*Id.* ¶ 4.) Ms. Gregory received her most recent equity award from Elevance on March 14, 2025, through which Elevance granted her 76 restricted stock units that would vest over the course of three years, beginning in March 2026 and ending in March 2028. (ECF 14-1.)

In her RVP Underwriting role, Ms. Gregory had no client-facing responsibilities, and she was five levels removed from Elevance's CEO. (*See* Gregory Decl. ¶¶ 4, 7.) Ms. Gregory had oversight responsibility at Elevance in connection with seven product lines: Affordable Care Act (ACA), Multiple Employer Welfare Arrangement (MEWA), Associations, Professional Employer Organizations (PEOs), Level-Funded, Fully-Insured, and Medicare Supplement. (*Id.* ¶ 5.) Of those seven product lines, Level-Funded business accounted for a relatively small portion. (*Id.* ¶ 6.)

C.    Ms. Gregory's Departure From Elevance

After nearly 18 years of working at Elevance, in April 2025, Ms. Gregory was contacted by a recruiter informing her of an opportunity at a smaller company—Gravie—which would allow her to focus on a single product, give her more influence in designing and implementing company processes and culture, and provide a faster pace of change than what she had become accustomed to at the much larger Elevance. (*Id.* ¶ 18.) On July 9, 2025, Ms. Gregory signed an offer letter

from Gravie in the role of Senior Vice President of Underwriting.  (*Id.* ¶ 10.)  In this role, Ms. Gregory has responsibility only for Level-Funded work. (*Id.* ¶ 18.)

On July 10, 2025, Ms. Gregory informed her direct supervisor at Elevance of her intent to resign from Elevance, which she intended to become effective July 25, 2025.  (*Id.* ¶ 11.)  On July 15, 2025, consistent with her notice obligations under her stock award with Elevance, (ECF 14-1 § 7(b)(vi)), Ms. Gregory informed Elevance that she had accepted the role of SVP, Underwriting at Gravie, and provided Elevance a full description of her prospective role and responsibilities at Gravie.  (Gregory Decl. ¶ 12.)

Elevance terminated Ms. Gregory's employment on July 23, 2025—two days earlier than Ms. Gregory had proposed when she provided notice of her resignation on July 10, 2025.  (*Id.* ¶ 14.)  Up to and including the date that Elevance terminated her employment, Elevance did not object to Ms. Gregory's acceptance or prospective commencement of the role at Gravie.  (*Id.*)

When Ms. Gregory left Elevance, she did not speak to any Elevance clients about her departure from Elevance or her role at Gravie.  (*Id.* ¶ 16.)  Nor has she had any business-related communications with any Elevance customers since leaving Elevance.  (*Id.*)  She also did not solicit, and has not solicited, any Elevance employees to leave Elevance, whether for Gravie or otherwise.  (*Id.* ¶ 23.)  Ms. Gregory did not take with her or keep any Elevance information or materials—confidential, proprietary, or otherwise—with the exception of a single document she created on July 1, 2025 using publicly available information about Elevance and Gravie offerings for the purpose of confirming her understanding that any degree of overlap between offerings from Gravie and offerings from Elevance was small.  (*Id.* ¶ 16.)

D.    Ms. Gregory's Employment at Gravie and Compliance with her Obligations to Elevance

Ms. Gregory joined Gravie on July 28, 2025. (*Id.* ¶ 19.) As a condition of her employment with Gravie, Ms. Gregory agreed she would not use any confidential information of any former employer, including Elevance. (*Id.* ¶ 19; Ex. B at 1.) In the more than two months that she has held the role at Gravie, Ms. Gregory has complied fully with those obligations, and she will continue to abide fully by her confidentiality obligations. (*Id.* ¶ 23.) While at Gravie, Ms. Gregory has not used, been asked to use, or had any occasion where she felt called upon to use any Elevance confidential information. (*Id.*) In fact, in her role at Gravie, Ms. Gregory has had no client interactions, no client-facing responsibilities, and no direct communications with clients. (*Id.* ¶ 22.) Moreover, Ms. Gregory does not even remember "pricing formulas" of Elevance or details of any purported Elevance trade secrets that she would have any need or desire to use in her role at Gravie. (*Id.* ¶ 8.)

Ms. Gregory is not subject to any post-employment noncompete covenant with Gravie like the onerous provision Elevance seeks to enforce in this Action. (*Id.* ¶ 21.)

## III.    ARGUMENT

Elevance fails to meet the extremely high burden it bears for the extraordinary relief it seeks—a burden that is even more heightened given that Elevance waited to seek emergency relief until *months* after Elevance was on notice that Ms. Gregory had commenced her role at Gravie. *See Taylor* v. *Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (mandatory preliminary injunctions which do not preserve the status quo are particularly "disfavored, and warranted only in the most extraordinary circumstances"). Elevance ignores this standard, and pretends that the status quo it asks the Court to preserve in late September 2025 is the state of affairs from over two months ago

on July 23, 2025—the date on which Ms. Gregory was still employed with Elevance. Under Elevance's reasoning, it could wait until 11 months and 29 days have passed to seek a TRO, and the "status quo" would be the nearly year-old state of affairs from the date before Elevance terminated Ms. Gregory's employment (while declining to object to Ms. Gregory's commencement of the role at Gravie). (*See* Br. 12–13.) [12] That position is contrary to fact and law. Elevance had a chance to object to Ms. Gregory's plan to join Gravie before she left Elevance but declined that opportunity. Elevance changed the status quo on July 23, 2025, when it took Ms. Gregory off Elevance's payroll without objecting to her proposed role at Gravie, and Elevance's much-delayed TRO request dated September 26, 2025 is subject to the heightened standard for mandatory injunctive relief. *See, e.g.*, *Taylor*, 34 F.3d at 270 n.2.

To warrant the extraordinary remedy of a temporary restraining order, Elevance must prove "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) injunctive relief is in the public interest." *Tactical Rehab., Inc.* v. *Youssef*, No. 24-CV-173, 2024 WL 1175709, at *1 (E.D. Va. Mar. 19, 2024). Elevance fails to establish a single elements, let alone all of them.

A.    <u>Elevance Is Not Likely to Succeed on The Merits</u>

Elevance is unlikely to succeed on the merits because the contractual restrictive covenants it seeks enforcement of (1) fail for lack of consideration, (2) are overly broad and unenforceable on their face, and (3) in any event would not warrant enforcement on the facts presented in this

---

[12] "Br. __" refers to Elevance Memorandum of Law In Support of its Motion for a TRO.

case.  Under Indiana law,[13] post-employment noncompetes are disfavored, will be narrowly construed, and will only be enforceable in limited circumstances in which the employer meets its burden proving that the restriction is necessary to protect legitimate business interests.  *See Clark's Sales & Serv., Inc.* v. *Smith*, 4 N.E.3d 772, 780 (Ind. Ct. App. 2014) ("Our supreme court has long held that noncompetition covenants in employment contracts are disfavored in the law, and we will construe these covenants strictly against the employer and will not enforce an unreasonable restriction. . . .  Indeed, '[p]ost-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through loss of his livelihood.'" (internal citation omitted) (quoting Restatement (Second) of Contracts, § 188c)).  This is because courts applying Indiana law recognize that covenants not to compete, by their nature, restrain competition and, accordingly curb the fundamental right of individuals to seek success in our free-enterprise society.  *See Coates* v. *Heat Wagons*, *Inc.,* 942 N.E.2d 905, 913 (Ind. Ct. App. 2011) ("Indiana courts strongly disfavor as restraints of trade covenants not to compete in employment contracts"); *see also Buffkin* v. *Glacier Group*, 997 N.E.2d 1, 9–10 (Ind. Ct. App. 2013) (collecting cases).

1.    *Elevance's Restrictive Covenants Fail for Lack of Consideration*

The restrictions Elevance included in Ms. Gregory's RSUAA fail for lack of consideration.  The "Restrictive Covenants" section of Elevance's contract with Ms. Gregory states: "As a condition to receipt of *the Restricted Stock Unit Grant made under this Agreement*, which Participant and the Company agree is fair and reasonable consideration, Participant agrees as

---

[13]  The Elevance Incentive Compensation Plan states that Indiana law governs the stock plan and all award agreements under it (*see* ECF 14-2 at 34 § 20.11); the RSUAA suggests that Virginia law may apply to that contract (*see* ECF 14-1 at 17).

follows," (ECF 14-1 § 7 (emphasis added)), to the overly broad post-employment noncompete, client nonsolicit, and employee nonsolicit obligations.    The Restricted Stock Unit Grant conditionally awarded to Ms. Gregory under the RSUAA consisted of 76 units of stock in Elevance, which would be awarded to Ms. Gregory in three tranches:  25 units in March 2026, 25 units in March 2027, and 26 units in March 2028.  (*Id.* at 1.)  Upon terminating Ms. Gregory's employment, Elevance cancelled the award of those units.  (*See id.* § 8; *see* ECF 14-2 § 20.2 (concerning cancellation or forfeiture in the event of voluntary resignation); *see also* Gregory Decl. ¶ 10.)  Ms. Gregory thus never received, and never will receive, the consideration that Elevance promised her expressly as the basis for her post-employment restrictions with Elevance.

Indeed, the RSUAA contains a Section titled "Return of Consideration" making clear that if Elevance, in its sole discretion, determines that Ms. Gregory leaves Elevance for a role Elevance considers competitive, all consideration provided to Ms. Gregory under the RSUAA in exchange for the restrictive covenants is returned to Elevance, including that any stock grants that had not yet been delivered to Ms. Gregory and remained due to Ms. Gregory (as was the case with the entirety of all stock grants awarded under the RSUAA) would be cancelled and not paid out to Ms. Gregory.  (*Id.* § 8(a); *see also* ECF 14-2 § 20.2.)  That is exactly what happened, and thus Elevance has no right to enforce restrictive covenants that fail for lack of consideration.  *See, e.g.*, *Eastern Va. Med. Sch.* v. *Found. for the Howard and Georgeanna Jones Institute for Reproductive Medicine*, 69 Va. Cir. 452, 3 (Va. Cir. 2006) ("Enforceable contracts must be supported by consideration, the price paid in exchange for the underlying promise of the contract."); *see also Bassett* v. *Scott Pet Prods., Inc.*, 194 N.E.3d 1185, 1192 (Ind. Ct. App. 2022) ("To constitute sufficient consideration to create a contract, a benefit must accrue to the promisor, or a detriment must accrue to the promise."); *see also North American Fire Ultimate Holdings, LP* v. *Doorly*,

11

No. 2024-0023, 2025 WL 736624, at *3–5 (Del. Ch. Mar. 7, 2025) (dismissing complaint to enforce stock award agreement when consideration was automatically forfeited upon alleged breach).

Moreover, the RSUAA states that its restrictive covenants supersede any prior restrictive covenants between Elevance and Ms. Gregory (*see* ECF 14-1 § 9(h)), so there is no other agreement Elevance can rely on in an effort to restrain Ms. Gregory's ability to work after the termination of her employment with Elevance.  *See MED-1*, 247 N.E. 3d 1269 at 1278–79 (finding that last-in-time restrictive covenant that included similar language superseded previous contract, which was "no longer in effect").[14]

### 2. Elevance's Restrictive Covenants Are Facially Overbroad and Unenforceable

Even if they had been supported by valid consideration, the restrictive covenants in Elevance's RSUAA with Ms. Gregory are facially overbroad in several respects.

*First*, the geographic restriction is vague and overly broad, as it applies to "any geographic areas in which the Company does business and which Participant . . . had access to Confidential Information about[] such business," whether or not Ms. Gregory had any responsibility for such

---

[14]  That the restrictive covenants fail for lack of consideration and are on that basis unenforceable against Ms. Gregory does not render the RSUAA in its entirety null and void, including because Elevance received independent consideration from Ms. Gregory as reflected in Elevance's Plan documents.  (*See* ECF 14-2 § 1.2 (noting that purposes of Plan include "to strengthen [employees'] commitment to [Elevance] . . . and to attract and retain competent and dedicated individuals . . . and to further align the interests of such . . . employees . . . with the interests of the shareholders of [Elevance]")); *cf. Fortiline, Inc.* v. *McCall*, No. 2024-0211, 2025 WL 1783560, at *6 (Del. Ch. June 27, 2025) (finding that stock award agreement did not constitute "waste" even after court held restrictive covenants to be overly broad and unenforceable, because company received adequate consideration in the form of attracting and retaining employees and incentivizing performance, as reflected in plan documents).

territory, actually accessed such confidential information, or could remember it today. (*See* ECF 14-1 § 7(b)(ii).) Under Indiana law, such an amorphous geographic restriction is unreasonable and unenforceable. *See, e.g.*, *Zimmer US, Inc.* v. *Keefer*, 2012 WL 5268550, at *9 (N.D. Ind. Oct. 23, 2012) (holding that "[e]ither a defined, geographical boundary must exist in the covenant, or a specific limited class of persons must be listed as those with whom contact is prohibited"). Courts applying Indiana law also hold that a geographic scope like this one may be overly broad if it covers "clients within [employee's] region of operations that [she] did not work with." *Zimmer US, Inc.* v. *Miller*, 2023 WL 3839516, at *5 & n.4 (N.D. Ind. June 6, 2023 (citing *Keefer* for the proposition that "a 60-mile radius of Altoona, PA restriction was unreasonable when that radius included client accounts the defendants had never worked with"). Elevance states that it interprets this provision to apply only to 14 states, (ECF 15 at 2–3), but that only proves that the unreasonably overbroad and amorphous geographic term is subject to Elevance's sole determination at whatever time it sees fit. In its request for a TRO, Elevance does not even bind itself to these 14 states, and instead relies on the vague and expansive definition of "Restricted Territory" in the case of any work in a (similarly vaguely defined) "Competitive Position," and does not include any geographic limitation on its request to prohibit Ms. Gregory from working for 12 months in a position that would involve (similarly vaguely defined) "Restricted Activity." (ECF 15 at 1.)[15]

*Second*, the noncompete restrictions are overly broad in their scope of restricted activity. The noncompete has two prongs. The first prong purports to bar Ms. Gregory from "any

---

[15] This is particularly egregious given that Elevance has hired executives away from direct competitors despite being subject to nationwide noncompete agreements. *See, e.g.*, *United Healthcare Servs., Inc.* v. *Louro*, No. 20-CV-2696, 2021 WL 533680, at *1 (D. Minn. Feb. 12, 2021).

employment or performance of services with a Competitor . . . similar to" any services she performed at Elevance in the last two years of her employment, (ECF 14-1 § 7(b)(i)), and defines "Competitor" as "any entity or individual (other than [Elevance]) engaged in" virtually any aspect of the health insurance industry "or any other aspects of the business or products or services offered by [Elevance] as to which [Ms. Gregory] . . . received Confidential Information about" at any time during the last two years of her employment with Elevance, (*id.* § 7(b)(iv)).  The second prong purports to bar Ms. Gregory from "perform[ing] a Restricted Activity in the Restricted Territory for a Competitor, with "Restricted Activity" defined to mean "any activity . . .about which Participant had Confidential Information" at any time during the last two years of her employment with Elevance.  (*Id.* §§ 7(b) & 7(b)(iii).)  Under Indiana law, courts have found noncompete agreements to be unenforceable when they "prohibit[] the employee from working for a competitor in any capacity," which effectively is the result of the vague and overly broad scope of Elevance's restrictions here.  *See Distrib. Serv., Inc.* v. *Stevenson*, 16 F. Supp. 3d 964, 973 (S.D. Ind. 2014); *see also Clark's Sales & Serv., Inc.*, 4 N.E.3d 772 at 82.  Under Virginia law, the noncompete provision in the RSUAA would be "unenforceable because it is vague." *Datson Corp.* v. *MiCore Solutions, Inc.*, 80 Va. Cir. 611, 4 (Va. Cir. 2010) (refusing to enforce noncompete that barred performance of services that were "substantially similar or related" to services previously performed for former employer).

*Third*, the customer non-solicitation provision is unreasonable, including because it applies to all Elevance customers Ms. Gregory may have had access to confidential information about, even if she never accessed that information, and even if the customer ceased its business with Elevance as long ago as late July 2023.  (*See* ECF 14-1 § 7(c)); *see Seach* v. *Richards, Dieterle & Co.*, 439 N.E.2d 208, 214 (Ind. Ct. App. 1982) (invalidating a restriction on former employee's

ability to contact customers whom they "had no contact [with] during the term of [their] employment"); *Clark's Sales & Serv., Inc.*, 4 N.E.3d at 781–82 ("[A] contract prohibiting contact with any past or prospective customers, no matter how much time has elapsed since their patronage, [is] vague and too broad." (citing *Seach*, 439 N.E.2d at 214)); *see also Integrity Auto Specialists, Inc.* v. *Meyer*, No. 10-114, 2011 WL 8964509, at *5 (Va. Cir. June 28, 2011) (invalidating a customer non-solicitation clause where it barred solicitation of former customers and imposed a burden on the former employee to independently ascertain covered customers).

*Fourth*, the employee non-solicitation provision is unreasonable, including because it applies to all employees even if Ms. Gregory had no involvement with them, regardless of whether they possess any relevant trade secrets, and even if they were not hired by Elevance until after Ms. Gregory's employment with Elevance terminated.  (*See* ECF 14-1 § 7(d)); *see Heraeus Med., LLC* v. *Zimmer, Inc.*, 135 N.E.3d 150, 155 (Ind. 2019) (invalidating an employee non-solicitation clause that extended to "any individual employed" rather than "just to those who have access to or possess any knowledge that would give a competitor an unfair advantage" (internal quotation s and citations omitted)); *Carroll* v. *Long Tail Corp.*, 167 N.E.3d 750, 761 (Ind. Ct. App. 2021); *see also Metis Grp., Inc.* v. *Allison*, No. 2019-10757, 2020 WL 8813756, at *5 (Va. Cir. Jan. 8, 2020) (invalidating employee non-solicitation clause that barred all employee solicitation regardless of whether it harmed the employer's interests).

*Fifth*, the duration of one year post-termination is unreasonably overbroad for a stock award agreement, and Elevance has not cited any case in which a court entered a one-year injunction barring an employee from working in a job based on a stock award agreement.

Effectively conceding that the restrictions it drafted are overly broad and unenforceable under applicable law, Elevance asks the Court to "blue-pencil" the restrictions somehow to make

them reasonable under the circumstances.  This Court should decline that invitation, as many courts applying Indiana law have when faced with an employer's overreaching restrictions.  *See, e.g.*, *Great Lakes Anesthesia, P.C.* v. *O'Bryan*, 99 N.E.3d 260, 268–69 (Ind. Ct. App. 2018) (declining to blue-pencil overly broad restrictions); *Clark's Sales & Serv.*,4 N.E.3d at 786 (declining to blue-pencil overly broad restrictions and noting that "Indiana law strongly discourages employers' attempts to draft unreasonably broad and oppressive covenants") (quotation and citation omitted).  As purported support for the blue-penciling it requests, Elevance cites *AL-KO Axis, Inc.* v. *Revelino*, No. 13-CV-1002 JD, 2013 WL 12309288, at \*19 (N.D. Ind. Oct. 25, 2013) (Br. at 23).  In that case, however, the court refused to blue-pencil an overly broad and unenforceable noncompete, despite a contractual provision permitting the court to blue-pencil overly broad terms.  *Id.* at \*6, \*10 (holding that "it is not possible to blue-pencil the provision so as to make it enforceable without rewriting it, so the provision must be struck in whole").

### 3.    *Elevance Fails to Demonstrate That the Facts Here Warrant Enforcement*

Even assuming Elevance's restrictions could be enforceable, the facts presented here would not warrant enforcement against Ms. Gregory preventing her from continuing to work in the role she has occupied at Gravie for the last two months.  Elevance does not assert that Ms. Gregory misappropriated any Elevance trade secrets, and Elevance has not established any trade secrets Ms. Gregory allegedly possesses in her head that she would have any need to use in her work at Gravie.  Elevance vaguely refers to "confidential business and pricing strategies" it asserts that Ms. Gregory had access to (*see* Br. 17, 27), but it does not specify anything within those categories that rises to the level of a trade secret, much less that warrants enforcement of restrictive covenants in a stock award agreement to bar Ms. Gregory from continuing to work.  *See, e.g.*, *Genesys Telecomms. Labs., Inc.* v. *Morales*, No. 19-CV-00695, 2019 WL 6682171, at \*6–7 (S.D. Ind.

16

2019) (refusing to enforce post-employment restrictions where pricing information was public or available to customers); *Bridgestone/Firestone Inc.* v. *Lockhart*, 5 F.Supp.2d 667, 681, 685 (S.D. Ind. 1998) (refusing to enforce restrictive covenants on the basis of pricing information, which is "the weakest kind of trade secrets . . . the value and reliability of which erode quickly" including because "customers are always free to compare competing prices and invite one competitor to beat another's offer").

Moreover, Ms. Gregory is not even involved in discussions with clients or prospective clients at Gravie, just as she was not involved in discussions with clients or prospective clients at Elevance while she was employed there. (Gregory Decl.¶ 7.) Elevance's extensive reliance on precedents enforcing noncompetes under Indiana law to protect "good will" thus is inapposite. (*See* Br. 16, 26.) Those cases state that a company is entitled to protect its "good will" and confidential information regarding that good will, but that refers to good will in a company's customer base cultivated by the employee through "representative contact" with the company's customers—which Ms. Gregory did not have at Elevance, and does not and will not have at Gravie. *See Unger* v. *FFW Corp.*, 771 N.E.2d 1240, 1244 (Ind. Ct. App. 2002).

At Gravie, Ms. Gregory has been responsible for running Gravie's underwriting operations processes, which are unique to Gravie and would not have use for Elevance information even if Ms. Gregory had it in her possession or somehow could remember the specifics of it. (*Id*. ¶ 8.) Ms. Gregory is obligated by the terms of her agreement with Gravie not to use, disclose, or rely on any confidential information belonging to any former employer, including Elevance. (Ex. B at 1.) She has abided by those obligations, and will continue to do so. (Gregory Decl. ¶ 23.) Those confidentiality obligations are sufficient to protect any legitimate interest Elevance has regarding confidential information to which Ms. Gregory was exposed. *See, e.g.*, *Elevance Health, Inc.* v.

*Mohan*, 2023 WL 6049674, at *8 (S.D. Ind. Sept. 15, 2023) (finding that Elevance was not entitled to a TRO when a former employee acted in accordance with the terms of their confidentiality agreement post-employment).

  B. <u>Elevance Has Not Established Irreparable Harm</u>

  Elevance cannot establish that it has suffered or is likely to suffer irreparable harm absent the emergency relief it seeks. Elevance must establish that the threat of irreparable harm is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.* v. *Breakthrough Med. Grp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

  Elevance notably does not identify *any* harm—irreparable or otherwise—it has suffered as a result of Ms. Gregory's over two months of work in the role at Gravie. Elevance argues that it *could* lose a customer to Gravie at some point in the future, (Br. at 26–27), but that is too speculative under applicable law because "the mere 'possibility of irreparable harm' is insufficient to satisfy the *Winter* factor regarding likelihood of harm" given that "injunctive relief [is] an extraordinary remedy." *Tactical Rehab., Inc.*, 2024 WL 1175709 at *2 (citing *Winter* v. *Natural Res. Def. Council*, 555 U.S. 7 (2008)); *Signature Flight Support Corp.* v. *Landow Aviation Ltd. P'ship*, 442 F. App'x 776, 785 (4th Cir. 2011) (affirming injunction where plaintiff "demonstrated not only a possibility of harm, but harm in fact" through actual evidence that alleged violation "*caused* [Plaintiff] to lose some if its customer base and goodwill") (emphasis in original); *see also Crossmann Cmtys., Inc.* v. *Dean*, 767 N.E.2d 1035, 1042 (Ind. Ct. App. 2002) (reversing grant of preliminary injunction as the alleged harm comprised "subjective concerns" and the "possibility of a future injury").

  Ms. Gregory has been working at Gravie for two months already and has complied with her post employment obligations to Elevance, and Elevance has provided no evidence to the

contrary. *See, e.g.*, *id.* (finding the employer did not establish irreparable harm where there was no proof the employee was soliciting customers"); *Pathfinder Commc'ns Corp.* v. *Macy*, 795 N.E.2d 1103, 1116-17 (Ind. Ct. App. 2003) (finding no irreparable harm where former employer did not lose any customers or advertisers as a result of employee's departure for competitor); *see also Elevance Health, Inc.* v. *Mohan*, No. 23-CV-01497, 2023 WL 6049674, at *8 (S.D. Ind. Sept. 15, 2023) ("Elevance's speculation that Ms. Mohan may, at some unidentified point in the future, use trade secrets is insufficient to establish the imminent, irreparable harm, absent an injunction, required to justify the extraordinary relief of an emergency TRO."); *see also Direx Israel, Ltd.*, 952 F.2d at 812.

Elevance's delay of two months before seeking a TRO further demonstrates that there is no credible threat of irreparable harm. *Allston* v. *Lewis*, 480 F. Supp. 328, 333 (D.S.C. 1979), (denying preliminary injunction because the plaintiff's delay between discovering conduct at issue and filing lawsuit "betrays his present contention that time is of the essence"), *aff'd*, 688 F.2d 829 (4th Cir. 1982); *F. W. Means & Co.* v. *Carstens*, 428 N.E.2d 251, 259–260 (Ind. Ct. App. 1981) (finding moving party "waived any right to injunctive relief" where it "failed to diligently pursue the injunction").

Moreover, the threat of losing business does not warrant injunctive relief, as it would be compensable with monetary damages. *See Hughes Network Sys., Inc.* v. *InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable."); *see also Ind. State Dep't of Welfare, Medicaid Div.* v. *Stagner*, 410 N.E.2d 1348, 1352 (Ind. Ct. App. 1980) (adverse business outcomes such as "loss of income" are "not the

19

sort of irreparable injury against which equity protects" as they can be remedied  "if [the party is] successful on the merits").[16]

Tellingly, despite having had two months to investigate the facts and prepare its motion for a TRO, Elevance fails to identify a single client it has lost to Gravie since Ms. Gregory's departure or any client opportunity it expects to lose to Gravie soon—let alone one that has any connection to Ms. Gregory.  Elevance protests that "[t]he number of customers that Elevance Health will lose will be incalculable," (Br. at 27), but that is absurd—Elevance knows how many customers it has, and can count the number of customers it may lose to Gravie (if any).  What Elevance really means, but does not want to say, is that the number of customers that Elevance has lost in the past two months due to Ms. Gregory's departure is zero.  Courts applying Indiana law have denied TRO requests for precisely this reason.  *See, e.g.*, *Zimmer, Inc.* v. *Davis*, 922 N.E.2d 68, 74 (Ind. Ct. App. 2010) (affirming denial of TRO where "there was no evidence that [Plaintiff] had lost any sales, lost any customers for its products, or lost any [employees] as a result of [Defendant's] employment with" alleged competitor); *Biomet 3i, LLC* v. *Land*, No. 16-CV-125, 2016 WL

---

[16] Elevance also cites cases suggesting that in "extraordinary circumstances" injunctive relief may be appropriate even where money damages are sought if the defendant is "judgment-proof." (Br. at 25.)  These cases have nothing to do with a restrictive covenant imposed on an employee through a stock award agreement and have no bearing here; in any event, they hold the opposite of what Elevance suggests. *See Simpson Plastering, LLC* v. *Skanska/Trident*, No. 16-CV-3439, 2017 WL 773550, at *2 (D.S.C. Feb. 27, 2017) (denying injunction in claim between construction companies under South Carolina law for lien on contract funds because plaintiff "has not plausibly pleaded any allegation that [defendant] is judgment proof"); *Levine* v. *Meador*, No. 20-CV-1073, 2022 WL 18912678, at *12 (E.D. Va. Mar. 29, 2022), *report and recommendation adopted*, No. 20-CV-1073, 2022 WL 18912217 (E.D. Va. Aug. 18, 2022) (granting injunction in defamation case under Virginia law "because [defendant] is a judgment-proof and wealthy defendant, who will not be deterred by a money judgment" because she "could simply pay the damages award and continue to defame Plaintiff").

3548355, at *4 (N.D. Ind. June 29, 2016) ("Even assuming, without deciding, that the Agreement between [Plaintiff] and [Defendant] is enforceable and permits injunctive relief in [Plaintiff's] favor, at this time the evidence presented in support of the TRO is insufficient to establish that [Plaintiff] will suffer immediate and irreparable harm before the preliminary injunction hearing.").

Nor has Elevance suddenly identified any purported trade secret it believes to be in peril due to Ms. Gregory's continued work at Gravie.  Indeed, despite having two months to investigate, Elevance cites no evidence that Ms. Gregory took any trade secrets with her.  Elevance cites a single document Ms. Gregory has in her possession from her time at Elevance, but Elevance does not suggest it contains any Elevance trade secrets or would be useful to Gravie or in Ms. Gregory's work for Gravie—in fact, Ms. Gregory prepared that document based on publicly available information about offerings from Elevance and Gravie for the purpose of confirming that any degree of overlap between the two companies' offerings was small.  (*See* ECF 1-9; *see also* Gregory Decl. ¶ 16.)

Unable to prove that there is any real emergency or threat of irreparable harm, Elevance resorts to boilerplate provisions it included in its stock award agreements.  (*See* Br. at 13–23.) These provisions are insufficient to establish irreparable harm, and do not displace Elevance's burden of proving irreparable harm.  *See, e.g.*, *Pool Scouts Franchising, LLC* v. *Stuart Rd. Corp.*, No. 24-CV-239, 2025 WL 961675, at *8 (E.D. Va. Mar. 31, 2025) ("While courts have given weight to parties' contractual statements regarding the nature of harm . . . they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief." (quoting *Dominion Video Satellite, Inc.* v. *Echostar Satellite Corp.*, 356 F.3d 1256, 1266 (10th Cir. 2004))); *see also CraneTech, Inc.* v. *Slack*, No. 24-

21

CV-693, 2025 WL 1754331, at *17 (N.D. Ind. June 25, 2025) (same).[17]  There is no credible threat of irreparable harm occurring in the next few weeks before the Court sets a schedule for briefing and hearing on Elevance's preliminary injunction motion, just as there has been no irreparable harm to Elevance in the last two months that Ms. Gregory has been working for Gravie.

      C.      <u>Elevance Has Not Established the Balance of Equities Tips In Its Favor</u>

The balance of equities tips decidedly in Ms. Gregory's favor.  *See, e.g., K & K of Va., LLC* v. *Brinkley*, 87 Va. Cir. 4 (2013) ("When comparing the significant harm [from the overbroad noncompete] that will befall on the [d]efendants if the temporary injunction is granted with the harm that may or may not be occurring to the [p]laintiff, it is clear that the balance of equities does not tip in the [p]laintiff's favor.").  As discussed above, Elevance's noncompete is so broad that it would effectively mean that Ms. Gregory is not able to work in a field where she has worked for the last 18 years.  *See supra* Section III.A.2.  Courts applying Indiana law have held that the balance of the equities tips in favor of the employee in similar circumstances.  *See RelaDyne Reliability Servs. Inc.* v. *Bronder*, No. 20-CV-377, 2020 WL 5745801, at *4 (E.D. Va. Aug. 4, 2020) ("preventing [defendant] from continuing to work for [new employer] pending a [preliminary injunction] hearing would constitute an impermissible hardship"); *Northwest Federal Credit Union,* v. *SBC Finance, LLC*, 2016 WL 6276962, at *6 (E.D. Va. Oct. 27, 2016) (finding balance of equities in employees' favor against employer seeking to enforce restrictive covenants); *SanAir Techs. Lab., Inc.* v. *Burrington*, 91 Va. Cir. 206, 2015 WL 12588951, at *4 (Va. Cir. Sept. 15,

---

[17] Elevance's reliance on *Kuntz* v. *EVI, LLC*, 999 N.E.2d 425 (Ind. Ct. App. 2013) and *Kira (US) Inc.* v. *Samman*, No. 23-CV-919, 2023 WL 4687189 (E.D. Va. July 21, 2023) is inapposite.  In *Kuntz*, the court held that the agreement containing the stipulation regarding irreparable harm "is not dispositive," although it may be persuasive.  *Kuntz*, 999 N.E.2d at 430.  As to *Kira*, Elevance acknowledges that it applies Delaware law and therefore does not control.  (Br. at 24.)

2015) (finding balance of equities in employee's favor where former employer failed to establish irreparable harm).  The equities also are decidedly against Elevance here given that Elevance has cancelled, and thus retained for itself, the full amount of the consideration that purportedly supported Ms. Gregory's acceptance of the restrictions in the RSUAA.

   D.    The Public Interest Is Against Enforcement of Elevance's Overly Broad Noncompete

   The public interest is against unfair use of overly broad noncompete agreements and favors employee mobility.  Here, on one hand, Elevance seeks to enforce an overbroad noncompete provision that would effectively force Ms. Gregory out of work; on the other hand, Virginia courts consistently hold that it is against public policy to impede an individual's ability to earn a living. *See, e.g.*, *Wings LLC* v. *Capitol Leather LLC*, 88 Va. Cir. 83, 2014 WL 7686953, at *7 (Va. Cir. Mar. 6, 2014) (holding that enforcement of unenforceable restrictive covenant would be against public interest); *Globus Medical, Inc.* v. *Jamison*, No. 22-CV-282, 2023 WL 5826908, at *20 (E.D. Va. Aug. 15, 2023) (finding public interest did not favor injunction to enforce noncompetes against former sales representatives); *Allied Fire Prot., Inc.* v. *Thai*, No. 17-CV-551, 2017 WL 4354802, at *8 (D. Md. Oct. 2, 2017) (finding that "[e]nforcing the non-compete provisions [which] would allow [the plaintiff] total control over [the defendant's] ability to make a living in any field even similar to what he did [for the plaintiff], and thereby unreasonably impede his ability to work," would be a violation of public policy); *see also Simmons* v. *Miller*, 544 S.E.2d 666, 678 (Va. 2001) (finding a noncompete agreement "offensive to the public policy of the Commonwealth" and "not enforceable" because the agreement had a lengthy duration and lacked geographical limitation); *SmartMail Servs., L.L.C.* v. *Ellis*, 66 Va. Cir. 507, 510 (2003) (declining to grant a temporary

23

injunction because it would enjoin "the ability of [the defendant] to earn a livelihood," which is contrary to Virginia public policy).

       E.     <u>A Bond Should Be Required In the Event the Court Enters a Restraining Order</u>

Should the Court enter a restraining order, it should require Elevance to post a bond under Federal Rule of Civil Procedure 65(c). *See Kira (US) Inc.* v. *Samman*, No. 23-CV-919, 2023 WL 4687189, at \*5 (E.D. Va. July 21, 2023) (requiring employer to post a bond despite contractual provision permitting employer to seek a restraining order without the necessity of proving damages).

## IV.    CONCLUSION

For the foregoing reasons, Ms. Gregory respectfully requests that the Court deny Elevance's Motion for a TRO, or, in the alternative, hold oral argument on the Motion before ruling on it.

Dated: October 1, 2025                          Respectfully Submitted,


**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**


<u>/s/ William Sutton Ansley</u>
William Sutton Ansley, (VA Bar No. 80085)
2001 K St NW,
Washington, DC 20006
Telephone: (202) 381-5033
Email: sansley@paulweiss.com

Liza M. Velazquez
Pietro J. Signoracci
Tenisha Williams
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Fax: (212) 373-3990
Email: lvelazquez@paulweiss.com
         psignoracci@paulweiss.com
         twilliams@paulweiss.com

*Counsel for Defendant*